USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/19/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

SHIPLANE TRANSPORT INC.,                          :
                                                  :
                              Plaintiff,          :
                                                  :
            -against-                             :        23-CV-10073 (VEC)
                                                  :
                                                  :        OPINION AND ORDER
HWY 31 EXCHANGE INC., MARK ANTHONY :
HAFNER, TANIA RENEE OROPESA,                      :
                                                  :
                                                  :
                              Defendants.         :
------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

In July 2022, February 2023, and other unspecified times, Defendant Hwy 31 Exchange, Inc. ("Hwy 31"), a Tennessee corporation, contracted with Plaintiff Shiplane Transport, Inc. ("Shiplane"), an Illinois corporation, to transport goods from Savannah, Georgia to the Dominican Republic. Plaintiff commenced this action against Hwy 31 and two of its officers, Mark Anthony Hafner and Tania Renee Oropesa, seeking damages for breach of contract and unjust enrichment after Defendants allegedly failed to pay freight and demurrage charges associated with the shipments. Defendants moved to dismiss the Second Amended Complaint ("SAC," *see* Dkt. 20), asserting lack of personal jurisdiction as to all Defendants, improper venue, and failure to state a claim against Mr. Hafner and Ms. Oropesa. Plaintiff contends that this Court has personal jurisdiction over Defendants because the parties, over the course of their relationship, transacted business pursuant to bills of lading with a forum selection clause that specified jurisdiction is proper in this Court. Defendants' motion is GRANTED, and the case is DISMISSED for lack of personal jurisdiction. The Court declines to transfer the action to

another venue and expresses no view as to whether the Complaint states a claim against the individual Defendants.

## BACKGROUND[1]

Plaintiff Shiplane is engaged in the maritime transport of goods.  SAC ¶¶ 8, 20. Defendant Hwy 31 is engaged in the shipping and export of goods.  *Id*. ¶¶ 9, 21–22.  Defendant Mark Anthony Hafner is President of Hwy 31, and Defendant Tania Renee Oropesa is an officer of Hwy 31.  *Id*. ¶¶ 12, 14.  Mr. Hafner and Ms. Oropesa work at Hwy 31's office in Columbia, Tennessee.[2]  *Id*. ¶¶ 10, 12.

Plaintiff alleges that Defendants failed to pay the freight charges associated with shipments from July 2022, February 2023, and unspecified "other dates".  *Id*. ¶¶ 2, 20, 22.  The February 2023 shipment was from Savannah, Georgia to Caucedo, Dominican Republic.  *Id*. ¶ 20.  The Second Amended Complaint does not specify the points of origination and destination for the July 2022 shipment or any of the other challenged shipments, although Mr. Hafner states in a declaration that all of Hwy 31's shipments with Shiplane started at Hwy 31's warehouse in Columbia, then proceeded to Savannah and ultimately to Caucedo.  Hafner Decl., Dkt. 36-1 ¶ 3.

According to Plaintiff, Defendants are responsible for the freight charges associated with the shipments because Hwy 31 was the designated "Shipper/Exporter" for the transactions.  SAC ¶ 20.  Plaintiff also alleges that Mr. Hafner was the "consignee" on the bill of lading associated the February 2023 transaction.  *Id*. ¶¶ 11, 21.  It further alleges that Ms. Oropesa was the consignee on another bill of lading at issue in this matter, although it is not clear to what

---

[1]       The Court accepts as true all allegations in the Second Amended Complaint, except those that are relevant to the personal jurisdiction inquiry and controverted by the declarations submitted by Defendants.  *See Seetransport Wiking Trader Schiffahrtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 580 (2d Cir. 1993).

[2]       The individuals may also reside in Tennessee although that is not entirely clear.  *See* note 8, *infra*.

transaction that allegation refers. *Id.* ¶ 13. In declarations submitted in support of their motion to dismiss, Mr. Hafner and Ms. Orpesa each deny ever being a consignee on any bill of lading for any transaction with Shiplane. *See* Hafner Decl. ¶ 5; Orpesa Decl. ¶¶ 2–3.

Plaintiff claims that Defendants owe $186,540 in freight charges for the challenged transactions. SAC ¶ 2. Defendants' failure to pay those charges resulted in the goods being held at the port to which they were shipped, and Defendants now allegedly owe $217,149.50 in demurrage. *Id.* ¶¶ 3, 23. Plaintiff seeks declaratory relief as to both the freight and demurrage charges.

Plaintiff alleges that Defendants, having used Shiplane's services in the past, were aware that the bills of lading associated with their shipments contain a "jurisdiction clause" specifying that jurisdiction is proper in the Southern District of New York. *Id.* ¶ 24. Plaintiff then cites a provision that reads:

> BY ACCEPTING THE INVOICE, Bill of Lading, NRA OR BY TENDERING THE CARGO TO THE CARRIER, SHIPPER AND CONSIGNEE CONSENT TO THE TERMS OF THE CARRIER AND ACKNOWLEDGE THAT THE CARRIER 'SHIPLANE' HAS A MARITIME LIEN BY OPERATIONS OF LAW ON ALL SHIPMENTS, CARGO IN THE HANDS OF T [*sic*] CARRIER, AND MARITIME LINE [*sic*] SHALL EXTEND TO ALL SHIPMENTS IN THE HAND OF THE CARRIER PAID OR UNPAID

*Id.* ¶ 25.

As part of its Opposition to Defendants' Motion to Dismiss ("Opp.," Dkt. 30-1), Plaintiff attached seven one-page bills of lading (the "2019 Bills of Lading"), each of which is associated with a shipment that occurred between January 2019 and April 2019. *See* Dkt. 31 at 1–8.[3] Plaintiff has not provided the bills of lading associated with the transactions from July 2022 or

---

[3]    Plaintiff appears to have submitted an identical set of bills of lading at two separate docket entries. *See* Dkts. 31, 32. For clarity and consistency, the Court will cite to the documents at Dkt. 31. Because the pages are not numbered, citations to page numbers are to the ECF-supplied page number.

February 2023 that are the basis of the lawsuit, nor has Plaintiff asserted that any of the 2019 Bills of Lading is associated with the unspecified transactions alluded to in the Second Amended Complaint.

Neither Mr. Hafner nor Ms. Oropesa is identified as a consignee on any of the 2019 Bills of Lading. Each 2019 Bill of Lading identifies Hwy 31 as the "Shipper/Exporter" and Blue Ocean Lines Dominicana SRL ("Blue Ocean") as the "Consignee." *Id.* at 1, 3–8. The 2019 Bills of Lading also identify Blue Ocean, with an address in the Dominican Republic, as the "Notify Party" for each shipment. *Id*.

Plaintiff's opposition also contains a page that it claims was included as the second page of each of the 2019 Bills of Lading. Opp. at 2; Dkt. 31 at 2; *see also* Dkt. 33 (reprinting the text). This page outlines numerous terms and conditions, including a forum selection clause that provides, in relevant part:

> Unless otherwise provided herein, any claim, dispute, suit or proceeding arising under or relating to this bill of lading shall be . . . brought only in the U.S. District Court for the Southern District of New York, or the Civil Court located in New York, in accordance with the Laws of the State of New York, U.S.A., except that at [Shiplane's] sole option, it may commence proceedings against Merchant at any court or tribunal having jurisdiction.

Dkt. 31 at 2; Dkt. 33 at 15.

In reply, Mr. Hafner and Ms. Oropesa submitted sworn declarations. Ms. Oropesa states that she has never seen a bill of lading for any shipment between Hwy 31 and Shiplane. Oropesa Decl., Dkt. 36-2 ¶ 2. Mr. Hafner attests that the only documents Shiplane ever purposefully sent him regarding Hwy 31's shipments were invoices, not bills of lading. Hafner Decl. ¶¶ 3–4. He further states he has only ever seen one Shiplane bill of lading; it was from November 2021 (the "2021 Bill of Lading"). *Id*. ¶ 4. According to Mr. Hafner, he was sent only the first page of the 2021 Bill of Lading, which was intended for the consignee and sent to him by mistake. *Id*.;

Hafner Decl. Ex. A.  He further states that the first page of the 2021 Bill of Lading does not contain the terms and conditions, and he has never seen any document that identifies the Southern District of New York as the venue for resolving disputes between Hwy 31 and Shiplane.  Hafner Decl. ¶ 4.

Like the 2019 Bills of Lading, the 2021 Bill of Lading identifies Hwy 31 as the Shipper/Exporter, but, unlike the 2019 Bills of Lading, APO Caribbean Logistic Network is the "Consignee" and "Notify Party."  Hafner Decl. Ex. A.  Blue Ocean, the consignee on the 2019 Bills of Lading, is identified as the "Agent at Destination."  *Id.*  Both Mr. Hafner and Ms. Oropesa state that they have never acted as the consignee for any shipment with Shiplane. Hafner Decl. ¶ 5; Oropesa Decl. ¶¶ 2–3.

On sur-reply, Plaintiff filed an affidavit from Peter F. Kennedy, the President of Shiplane. Mr. Kennedy asserts that forum selection clauses are common in the shipping industry and that all parties, including shippers, are expected to review closely all bills of lading.  Kennedy Aff., Dkt. 42 ¶ 4–5.  Given that it is customary for bills of lading to exceed a single page, Mr. Kennedy concludes, "Clearly the defendants must have received both pages of the Bills of Lading that were used in the various shipments between the parties."  *Id.* ¶ 7.

Plaintiff filed the operative Second Amended Complaint on January 23, 2024, asserting claims for breach of contract and unjust enrichment.  Defendants moved to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) (lack of personal jurisdiction) and 12(b)(3) (improper venue).  *See* Defendants' Motion to Dismiss, Dkt. 24; Defendants' Memorandum of Law in Support of Motion to Dismiss ("Br."), Dkt. 25 at 1.  Defendants also moved to dismiss the claims against Mr. Hafner and Ms. Oropesa under Federal Rule of Civil Procedure 12(b)(6) (failure to state a claim upon which relief can be granted).  Br. at 1.

## DISCUSSION

I.    **The Court Does Not Have Personal Jurisdiction over Defendants**

A.  **Legal Standard**

In a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing jurisdiction.  *See MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012). Personal jurisdiction of a federal court sitting in diversity over a non-resident defendant is subject to a "two-part analysis."  *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999).  First, the Court applies the long-arm statute of the forum state, here New York.  *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001).  If the exercise of jurisdiction is appropriate under the long-arm statute, the Court must then determine whether such exercise comports with due process.  A court has personal jurisdiction over an out-of-state defendant only if "the defendant has 'certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"  *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014) (alteration in original) (quoting *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945)).

In deciding a motion to dismiss for lack of personal jurisdiction, the Court may consider materials outside the pleadings.  *Jonas v. Est. of Leven*, 116 F. Supp. 3d 314, 323 (S.D.N.Y. 2015).  In such cases,

> [t]he plaintiff bears the burden of establishing personal jurisdiction over the defendant.  Prior to trial, however, when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing.  The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits.

*Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 580 (2d Cir. 1993) (citation and internal quotation

marks omitted); *see also MacDermid*, 702 F.3d at 727.  The Court need not accept as true either

party's legal conclusions nor draw "argumentative inferences" in either party's favor.  *See Licci*

*ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (citation omitted).

"[A]ffidavits or declarations in support of personal jurisdiction 'must be made on personal

knowledge, set out facts that would be admissible in evidence, and show that the affiant or

declarant is competent to testify on the matters stated.'"[4]  *Vasquez v. Hong Kong & Shanghai*

*Banking Corp., Ltd*., 477 F. Supp. 3d 241, 251 (S.D.N.Y. 2020) (quoting Fed. R. Civ. P.

56(c)(4)).

### B.    Plaintiff Has Not Demonstrated the Existence of an Enforceable Forum Selection Clause

Plaintiff argues that the Court has personal jurisdiction because Defendants are bound by

the forum selection clauses contained in the bills of lading.[5]  "In the admiralty context, forum

selection clauses 'are prima facie valid and should be enforced unless enforcement is shown by

the resisting party to be 'unreasonable' under the circumstances.'"  *Am. Int'l Grp. Eur. S.A.*

---

[4]    Plaintiff declined the opportunity to file a sur-reply brief, instead filing Mr. Kennedy's affidavit on sur-reply as a standalone document.  Because the Court is unable to consider statements contained in an affidavit that are not based on personal knowledge, much of Mr. Kennedy's affidavit is afforded no weight.  To the extent Plaintiff intended for Mr. Kennedy's affidavit to act as a brief, the Court notes that it permitted Plaintiff to file a sur-reply not to exceed five double-spaced pages. *See* Dkt. 41.  Mr. Kennedy's affidavit, at five single-spaced pages, far exceeded that limit.

[5]    The parties appear to agree that if there is no enforceable forum selection clause, this Court lacks personal jurisdiction over the Defendants.  New York's long-arm statute provides for both general and specific personal jurisdiction.  A New York court may exercise general jurisdiction over a non-resident defendant if it is engaged "in 'continuous, permanent, and substantial activity in New York.'"  *Wiwa v. Royal Dutch Petroleum Co*., 226 F.3d 88, 95 (2d Cir. 2000) (citation omitted); N.Y. C.P.L.R. § 301.  To exercise specific jurisdiction over a non-resident defendant, "[t]he defendant must have transacted business within the state; and . . . the claim asserted must arise from that business activity."  *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015) (quoting *Licci*, 732 F.3d at 168); C.P.L.R. § 302(a)(1).  The Second Amended Complaint does not identify any contacts between Defendants and the State of New York, nor does it refer to any activity taking place in New York.  To the extent Plaintiff hints at a specific personal jurisdiction argument in its submissions, it notes in passing that the shipments "originated from various states," potentially including New York.  Opp. at 5.  This is irrelevant to the personal jurisdiction inquiry because Plaintiff does not allege that any of the shipments at issue actually *did* originate in New York. *See Rollo v. Escobedo*, No. 16-CV-6923, 2017 WL 2600107, at *3 (S.D.N.Y. June 15, 2017) ("[P]ersonal jurisdiction is not based on hypothetical contacts.").  It is also contradicted by Mr. Hafner's declaration, which asserts that "[n]one of the shipments ever originated in New York."  Hafner Decl. ¶ 3.

*(Italy) v. Franco Vago Int'l, Inc.*, 756 F. Supp. 2d 369, 376 (S.D.N.Y. 2010) (quoting *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10 (1972)). The Second Circuit has adopted a four-factor analysis to determine whether a forum selection clause is enforceable. *See Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007). The first three factors are: (1) whether the clause was reasonably communicated to the party resisting enforcement; (2) whether the clause is "mandatory or permissive;" and (3) whether the claims and parties are subject to the forum-selection clause. *Id.* "If the forum clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable." *Id.* For the first three factors, the burden of proof is on the party seeking to enforce the clause. *Tropp v. Corp. of Lloyd's*, 385 F. App'x 36, 37 (2d Cir. 2010). The burden shifts on the final factor, which requires the party resisting enforcement to rebut the presumption of enforceability. *Id.*; *Phillips*, 949 F.3d at 383.

Plaintiff fails on the first *Phillips* factor, which requires the party seeking to enforce the forum selection clause to show that it "had done all it reasonably could" to communicate the clause's substance and existence. *MTS Logistics, Inc. v. Innovative Commodities Grp., LLC*, 442 F. Supp. 3d 738, 748 (S.D.N.Y. 2020) (quoting *Silvestri v. Italia Societa Per Azioni Di Navigazione*, 388 F.2d 11, 17 (2d Cir. 1968)). Mr. Hafner, on his own behalf and on behalf of Hwy 31, and Ms. Oropesa attest that they were never provided the terms and conditions of the bills of lading, including the portion containing the forum selection clause. If true, that would mean that Shiplane had not "done all it reasonably could" to communicate the clause to Defendants. *Id.*; *see also FSB USA, Inc. v. Am. Prod. Co. of Pinellas Cnty.*, No. 3-08-CV-1758, 2009 WL 2762744, at *5 (D. Conn. Aug. 24, 2009) ("It is hard to find that [the defendant] did *all* it reasonably could; simply sending one copy of the Terms [containing the forum selection

8

clause] . . . , which this court has reasonably concluded that it failed to do, would have ensured that the terms were reasonably communicated.").

Plaintiff offers essentially no counter to Hafner and Oropesa's declarations.  The Second Amended Complaint does not allege that any bill of lading containing a forum selection clause was ever sent to any Defendant.  Mr. Kennedy asserts repeatedly in his affidavit that Defendants *should* have been sent the bills of lading; significantly, he never asserts that Shiplane actually sent them to Defendants.  *See* Kennedy Aff. ¶¶ 5, 7–8, 14–16, 19.  Plaintiff's only attempt to rebut the Defendants' evidence is speculative, with Mr. Kennedy stating that it is "inconceivable" that Defendants never received a copy of a complete bill of lading.  *Id*. ¶ 3.[6] Such speculation is entitled to no weight because it is "entirely self-serving and not supported by any claim of personal knowledge, or other evidence in the record."  *Leniart v. Murphy*, No. 3:11-CV-01635, 2016 WL 1273166, at *13 (D. Conn. Mar. 31, 2016).

Moreover, Defendants have a perfectly reasonable explanation for why they never saw the forum selection clause.  According to Mr. Hafner, Shiplane's bills of lading were sent to the consignee, not the shipper.  Hafner Decl. ¶ 4.  Hwy 31 was the shipper and neither Mr. Hafner nor Ms. Oropesa was ever a consignee for any transaction with Shiplane.  *Id*. ¶ 5; Oropesa Decl. ¶ 3.  Mr. Kennedy makes two arguments to support the allegation in the Second Amended Complaint that Mr. Hefner and Ms. Oropesa were consignees, but neither is persuasive.  First, he claims "APO" (presumably APO Caribbean Logistic Network, the consignee on the 2021 Bill of Lading that Mr. Hafner claims was inadvertently sent to him) was a "diversion consignee" that Mr. Hafner used because Hwy 31 was not compliant with Dominican customs regulations.

---

[6]     Kennedy actually says that "it is inconceivable that Defendants have claimed not to have the second page of the Bill of Lading in all the shipments that [Shiplane has] used over the years."  Kennedy Aff. ¶ 3.  Inasmuch as Defendants claimed exactly that, the Court presumes that Kennedy meant that it is inconceivable that they never received the documents.

Kennedy Aff. ¶ 14. Even if it were appropriate for the Court to credit this assertion (which it is not because there is no indication that Mr. Kennedy has personal knowledge), it would be irrelevant. There is no evidence that Defendants saw or had access to any bills of lading directed to APO, nor that APO had anything to do with the shipments at issue here. Second, Mr. Kennedy claims that, because some items Hwy 31 shipped were "intended for the construction of [Mr. Hafner and Ms. Orpesa's] personal residence, as well as multiple vehicles for personal use," they should be assigned "consignee status." *Id.* ¶ 15. The Court can surmise no reason why the ultimate purpose of the shipments has any bearing on which party was the consignee that received the bill of lading.

At bottom, the question of whether Defendants acted as consignees for the relevant transactions comes down to an allegation in the Second Amended Complaint that they did, *see* SAC ¶¶ 11, 13, 20–21, and sworn statements from Mr. Hafner and Ms. Oropesa that they did not, Hafner Decl. ¶ 5; Oropesa Decl. ¶ 3. The Court can only accept Plaintiff's jurisdictional allegations as true to the extent they are not contradicted by Defendants' declarations. *See Seetransport*, 989 F.2d at 580. Therefore, this evidence is, at best, a wash. Moreover, even if the Defendants were consignees, that would not mean they were ever provided with the forum selection clause. Mr. Hafner and Ms. Oropesa have both sworn that they were never sent the forum selection clause. That uncontroverted evidence is fatal to Plaintiff's argument that the clause was reasonably communicated.

The 2019 Bills of Lading submitted by Plaintiff do nothing to alter this conclusion. Indeed, it is unclear what relevance the 2019 Bills of Lading have to this case. Each of them bears a date between January 2019 and April 2019, but the transactions on which this case is based allegedly occurred in July 2022, February 2023, and some unspecified "other dates." SAC ¶ 2. There is nothing in the Plaintiff's submissions nor in the Second Amended Complaint

(which merely states that Defendants "used Plaintiff['s] services in the past and were aware of the language of the bill of ladings with a jurisdiction clause," *id.* ¶ 24) that connects the forum selection clause in the 2019 Bills of Lading to the bills of lading applicable to the challenged transactions.

Plaintiff argues that regardless of the contents of the bills of lading for the specific transactions at issue, the inclusion of a forum selection clause in the 2019 Bills of Lading proves a "pattern" of communications between the parties sufficient to constitute "acceptance" of a New York forum.  Opp. at 5.  While courts in this circuit have sometimes found the first *Phillips* factor satisfied even where a forum selection clause is not delivered directly to the party resisting enforcement, they have only done so where there is ample evidence of communications sufficient to put the party on notice of the existence of the clause.  *See, e.g.*, *Starkey v. G Adventures, Inc*., 796 F.3d 193, 197 (2d Cir. 2015) (forum selection clause was reasonably communicated in terms and conditions hyperlinked in three separate emails); *Salis v. Am. Exp. Lines*, 566 F. Supp. 2d 216, 221–23 (S.D.N.Y. 2008), *aff'd in part, vacated in part on other grounds*, 331 F. App'x 811 (2d Cir. 2009) (forum selection clause in a bill of lading was reasonably communicated where the party resisting enforcement was aware of the terms and conditions contained in past bills of lading *and* was presented with a dock receipt stating that the transaction was subject to terms and conditions of the bill of lading); *cf. Midamines SPRL Ltd. v. KBC Bank NV*, No. 12 CV 8089, 2014 WL 1116875, at *3 (S.D.N.Y. Mar. 18, 2014), *aff'd*, 601 F. App'x 43 (2d Cir. 2015) ("A clause is reasonably communicated to a party where the party signs an agreement that explicitly directs the party to the clause.").  Here, Defendants have sworn — and Plaintiff has offered no non-speculative rebuttal — that no bill of lading was ever purposefully directed to them; that the one bill of lading they received in error did not include the page with the purported forum selection clause; and that they never saw the forum selection

clause in any other context.  Hafner Decl. ¶ 4.  Far from showing a "pattern" of communication,

Defendants' evidence suggests a total lack of communication.

In short, Plaintiff has failed to satisfy its burden as to the first factor of the *Phillips*

inquiry.  This conclusion disposes of the forum selection clause argument and obviates the need

to consider the remaining *Phillips* factors.  This Court lacks personal jurisdiction over the

Defendants.

## II.  Transfer of Venue is Inappropriate

Because "[t]he district court has th[e] power to transfer venue even if it lacks personal

jurisdiction over the defendants," the Court will briefly address the parties' arguments regarding

venue.  *Fort Knox Music Inc. v. Baptiste*, 257 F.3d 108, 112 (2d Cir. 2001).  Pursuant to 28

U.S.C. § 1391(b), a federal civil action may be brought in

> (1) a judicial district in which any defendant resides, if all defendants are residents
> of the State in which the district is located; (2) a judicial district in which a
> substantial part of the events or omissions giving rise to the claim occurred, or a
> substantial part of property that is the subject of the action is situated; or (3) if
> there is no district in which an action may otherwise be brought as provided in
> this section, any judicial district in which any defendant is subject to the court's
> personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).  For venue purposes, a "natural person" resides in the judicial district in

which the person is domiciled, and any other "entity with the capacity to sue and be sued"

resides in any judicial district in which it is subject to personal jurisdiction.  28 U.S.C.

§ 1391(c)(1), (2).

Venue is improper in this District under 28 U.S.C. § 1391(b)(1) because none of the

Defendants is a New York resident.  *See* SAC ¶¶ 9–12.  Venue is also improper under 28 U.S.C.

§ 1391(b)(2) because the Court lacks general and specific personal jurisdiction over all

Defendants, *see* note 5, *supra*, and "[t]he 'substantial part test' is more rigorous than 'the

minimum contacts test employed in personal jurisdiction inquiries.'"  *Micromem Techs., Inc. v.*

*Dreifus Assocs. Ltd.*, No. 14-CV-9145, 2015 WL 8375190, at *4 (S.D.N.Y. Dec. 8, 2015)

(quoting *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005)).[7]

Where venue is improper, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S. Code § 1406(a). Plaintiff argues that the Court should transfer this action to Illinois. Opp. at 7. Although it does not indicate to which district in Illinois it proposes transfer, that is of no moment as venue is not proper in Illinois.

Plaintiff proposes laying venue in Illinois because it is headquartered there, *id.*, but 28 U.S.C. § 1391(b)(1) focuses exclusively on Defendants' residence. Plaintiff also argues that venue is proper in Illinois under 28 U.S.C. § 1391(b)(2) because "shipments originated or departed from various states," including Illinois. Opp. at 7. That argument is not supported by any allegations in the Second Amended Complaint or any evidence in the submissions; even if it were, it would not satisfy the "substantial part" test. "When material acts or omissions within the forum bear a close nexus to the claims, they are properly deemed 'significant' and, thus, substantial, but when a close nexus is lacking, so too is the substantiality necessary to support venue." *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 433 (2d Cir. 2005); *see also Gulf Ins. Co.*, 417 F.3d at 357 ("[W]e caution district courts to take seriously the adjective 'substantial.' We are required to construe the venue statute strictly."). This case involves shipments from Tennessee to Georgia to the Dominican Republic. There is no nexus between Illinois and the events that gave rise to this action. *See, e.g.*, *Blakely v. Lew*, 607 F. App'x 15, 17 (2d Cir. 2015) (substantiality requirement not satisfied simply because material decisions were communicated from, and relevant documents were prepared in, the district where venue was

---

[7]    The catchall provision in 28 U.S.C. § 1391(b)(3) is not applicable.

sought); *Bare Body Laser Spa, Inc. v. Billings*, No. 23 CIV. 9951, 2024 WL 3445333, at *5 (S.D.N.Y. July 17, 2024) (substantiality requirement not satisfied where parties had occasional interactions in the district where venue was sought).

The other potential venue for this action is the Middle District of Tennessee, which Defendants propose in the alternative if the Court declines to dismiss.  Br. at 7–8.  Venue would be likely proper in the Middle District of Tennessee because Hwy 31 is headquartered and incorporated there, and Mr. Hafner and Ms. Oropesa appear to reside there.[8]  *See* 28 U.S.C. § 1391(b)(1), (c); *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 135 (2d Cir. 2014) (citing *Daimler*, 571 U.S. at 139 n.19).  It would not, however, be "in the interest of justice" to transfer this case to that District.  28 U.S.C. § 1406(a).  Such transfer would not be the preferred course of action for either party:  Plaintiff does not believe Tennessee is an appropriate forum, and Defendants only seek transfer as an alternative to dismissal.  Opp. at 7; Br. at 8.  If Plaintiff chooses to refile in Tennessee, it has ample time to do so because Tennessee has a six-year statute of limitations for breach of contract claims and the earliest contract referenced in the Second Amended Complaint is only two years old.  Tenn. Code § 28-3-109(a)(3); SAC ¶ 2.  Absent some overriding public interest — which the parties have not identified and the Court does not perceive — transfer is inappropriate.

---

[8]    The Court is unable to conclude with certainty where Mr. Hafner and Ms. Oropesa reside because they do not clarify this in their declarations and the Second Amended Complaint alleges only the location of their office, not their residence.  *See* SAC ¶¶ 10, 12.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED, and the case is DISMISSED for lack of personal jurisdiction. The Clerk of Court is respectfully requested to close the motion at Dkt. 24 and to close the case.


**SO ORDERED.**

**Date:  August 19, 2024**
      **New York, New York**

                                      **VALERIE CAPRONI**
                                      **United States District Judge**